In the Matter of the Accounting of WALTER G. ROBINS et al., as Temporary Administrators and Executors of DAVID C. REID, Deceased.

Surrogate's Court, Westchester County, February 18, 1948.

*White & Case* for temporary administrators and executors, petitioners.

*Otis T. Bradley* and *Standish F. Medina* for David G. Knight.

*Joseph Pickholtz* and *Robert G. Fanelli* for Melville Gordon.

*Milbank, Tweed, Hope & Hadley* for Chase National Bank of the City of New York.

*Ehrich, Royall, Wheeler & Holland* for Margaret W. Reid.

*J. Lester Albertson* for Barbara R. Whitney.

*Francis P. Brady,* special guardian.

GRIFFITHS, S. In this proceeding for the settlement of the accounts of the petitioners as temporary administrators and as executors under the will of the above-named decedent, the executors request a determination as to the source of payment of Federal estate taxes and the penalty interest thereon.

The article relating to the payment of taxes follows the dispositive provisions of the will and reads as follows: " *Twelfth:* I direct my executors to pay out of my general estate any and all inheritance, succession or transfer taxes which may be levied, imposed or assessed against my estate, or the legacies, life estates, annuity and devises hereinbefore set forth."

There is no dispute that as to property passing under the will the language above quoted contains a clear direction against apportionment as provided for in section 124 of the Decedent Estate Law. And it is reasonably clear from the language employed that the will contains a direction against apportionment extending to taxes against nontestamentary benefits as well as upon taxable benefits passing under the will. Elsewhere in the will the testator employed the term " my estate " as referable to his testamentary estate. And the term " general estate " as here employed means the residuary estate.

(*Matter of Mills*, 272 App. Div. 229.) The use of the phrase "against my estate" and its separation by the word "or" from the enumeration of all testamentary benefits provided for in the will, connotes the distinction made by the testator between estate taxes on nontestamentary transfers and the benefits provided for in the will. (*Matter of Aldrich*, 259 App. Div. 162; *Matter of Haliday*, 184 Misc. 668.)

If the will were read in the light of the law applicable when it was drawn and on the date of death (*Matter of Duryea*, 277 N. Y. 310; *Matter of Mills, supra*), the same conclusion would be reached. The instrument in which the above-quoted provision appears is dated June 9, 1932, and was followed by two codicils dated December 5, 1935, and March 14, 1939. The decedent died on May 21, 1943. Prior to 1931 the testator had created several *inter vivos* trusts. After 1931 he made advances to several such trusts to augment the principal amounts thereof. An outright gift of certain shares of stock to testator's wife made during August or September, 1935, was followed by a gift to her of additional shares in 1940.

It was not until *Helvering* v. *Hallock* (309 U. S. 106) decided in 1940, that the question of the inclusion of principal of an *inter vivos* trust in a decedent's taxable estate was finally settled. (*Matter of Mills, supra*.) In *Matter of Mills* (*supra*) the court in determining that a direction against apportionment was limited to taxes on testamentary benefits, observed that the testator had died in 1937, before the question of the taxability of principal of *inter vivos* trusts had been finally settled. Here, even if it be assumed that the will was drawn in the belief that the remainder of the trusts theretofore created would not be taxable, that question was settled several years prior to the death of testator herein. It may not be assumed, however, that the testator or his draftsman failed to contemplate the possibility that the outright transfers of stock made to his wife would be subjected to estate tax, or that the taxability of the earlier stock transfer was overlooked in the execution of the later codicil expressly confirming the will.

It does not appear that penalty interest on the tax was incurred by any lack of diligence on the part of the executors. The deficiency tax assessed was compromised by the inclusion in the gross taxable estate of nontestamentary transfers which, in the main, represented transfers made to or for the benefit of the wife of testator and the exclusion of transfers to or for the benefit of others. "Penalty interest" on a Federal tax is not a part of the tax but something in addition to the tax.

(*Penrose* v. *United States*, 18 F. Supp. 413; *Matter of Harjes*, 170 Misc. 431; *Matter of Chambers*, 54 N. Y. S. 2d 88; *Matter of Kent*, 191 Misc. 939.) Neither section 124 of the Decedent Estate Law nor the provisions of the will extend to apportionment or nonapportionment with respect to penalty interest on such tax. The entire impact of penalty interest is therefore not necessarily payable in the same manner as the tax. (*Matter of Chambers, supra*; *Matter of Harjes, supra*; *Matter of Kent, supra*.) As the residuary estate is given in trust, it is determined that under the rule enunciated by this court in *Matter of Chambers* (*supra*) penalty interest shall be paid from income earned at the average rate of return, upon that portion of trust principal devoted to the payment of estate taxes, for the period commencing fifteen months from the death of testator, and that trust principal shall bear any balance of such penalty interest.

The executors will be authorized to compromise as proposed the claims in favor of and against the estate relating to or arising out of the judgment stated to be uncollectible, and to assign the decedent's interest in said judgment as suggested. As to the shares of capital stock of David C. Reid, Inc. and Weaver Shipping Oil Corp. stated to be uncollectible, the executors will be authorized to retain such stock and will be relieved from further accountability with respect to such shares. One-half commissions will be computed with respect to the item of $4,000 stated to represent funds held by the decedent as life tenant.

Submit decree on notice accordingly.