In the Matter of the Construction of the Will of FLORENCE R. HERZ, Deceased.

Surrogate's Court, New York County, January 6, 1953.

*Maurice L. Dundes* for Max Herz and another, as executors of Florence R. Herz, deceased, petitioners.

*Irving M. Maron,* special guardian for unborn heirs of James L. Herz, respondent.

FRANKENTHALER, S. This proceeding was instituted by the executors of decedent's estate to obtain a construction of her holographic will.

Testatrix provided that " as yet all the Monroe Rosenau estate is not settled — Just as soon as it is — I want a trust fund established as I state below — I want a trust fund of sixty-five ($65,000) thousand dollars established ". Monroe Rosenau referred to above died October 16, 1948, but at the death of testatrix on January 4, 1951, his estate was still being adminis-

tered. The court holds that the will creates a valid trust in the principal amount of $65,000 from the moneys received on the settlement of the Rosenau estate and that testatrix' husband is entitled to receive the income from such amount during the period from March 4, 1952, the date of receipt of the final distribution from the aforesaid estate, to the date of the erection of this trust.

Testatrix then provided that " the interest therefrom to be paid to my husband Max Herz for his lifetime or until such time he would remarry or have to go into an home " and that her son, James Herz, upon attaining the age of fifty-three and surviving his father should have " the privilege of with drawing the principle or changing the fund ". The court holds that in the event that James survives Max, James has the right, upon attaining the age of fifty-three, to withdraw the entire principal and terminate the trust, but if he dies before the age of fifty-three having survived Max, the corpus of the trust is to be paid to his legal representatives. If James does not survive Max, then upon the latter's death one half of the corpus of the trust shall be paid to the legatee named by testatrix and one half to the issue of James living at the death of Max. Although testatrix referred to " James heirs " in this connection rather than " James' issue ", and section 47-c of the Decedent Estate Law defines " heirs " more broadly than " issue ", nevertheless the meaning of " heirs " may be limited where a different intention is expressed in the will (*Thurber* v. *Chambers*, 66 N. Y. 42; 7 Warren's Heaton on Surrogates' Courts, § 44, p. 290). Here, testatrix expressed such a different intention as she has made alternative bequests to persons who would be James' heirs in the event that he should die without issue.

The declaration of testatrix that " I want at least one-third of money in fund invested in common stocks in order to get larger income ", does not authorize the trustees to invest in ineligible securities in excess of the permissible amount specified in paragraph (m) of subdivision 1 of section 21 of the Personal Property Law (*Matter of Bender,* 200 Misc. 768). As petitioners have waived commissions, construction of the clause relating to compensation is unnecessary.

After providing for the $65,000 trust testatrix bequeathed the residue of her estate " to Max and James equally — This I want them to own together ". Although additional language in the same paragraph contains trust phraseology there is no designation of trustees or of a trust fund nor is there, in contrast with the specific language immediately prior thereto, a

clearly expressed intention to create a trust. As the later language is at best equivocal, the original bequest will not be cut down (*Tillman* v. *Ogren*, 227 N. Y. 495; *Trask* v. *Sturges*, 170 N. Y. 482) and it is held that the residuary estate vests in the legatees as joint tenants subject to the conditions therein set forth.

With respect to the Florida real estate, to which testatrix referred in the will, section 13 of the Decedent Estate Law confers ample authority upon the executors to act as they deem prudent without detailed instructions from this court.

Among the assets of decedent's estate were United States savings bonds payable on death to her husband, and a joint checking account and a joint savings account, both of which were in the names of decedent and her husband, payable on death to the survivor. This property passes to decedent's husband by operation of law wholly apart from the provisions of the will (*Matter of Cook*, 193 Misc. 261; Banking Law, § 134, subd 3; § 239, subd 3).

In view of the fact that testatrix juxtaposed a direction for payment of taxes with the provision for payment of "legal expenses", thereby indicating that taxes are to be paid in the same manner and from the same fund as such expenses, and that she directed the creation of a trust fund in a specific amount, there is sufficient expression of an intention that such taxes be paid out of the residuary estate without apportionment among the legatees (*Matter of Hund*, 266 App. Div. 379; *Matter of James*, 180 Misc. 441, affd. 267 App. Div. 761, motion for leave to appeal denied 267 App. Div. 820). The attempted disposition of the United States savings bonds and the joint bank accounts reflects testatrix' intention to treat these assets as part of her estate and they will likewise be exempted from apportionment (see *Matter of Frank*, 195 Misc. 406; *Matter of Staheli*, 57 N. Y. S. 2d 185; and *Matter of Patterson*, 196 Misc. 21).

Submit decree on notice construing the will accordingly.